UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KATHLEEN A. FLYNN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DOCKET NO. |
| | ) | |
| MASSACHUSETTS BAY | ) | **04-12349 RCL** |
| TRANSPORTATION AUTHORITY, | ) | |
| JOHN ROSSI and WILLIAM DEVLIN, | ) | |
| Defendants. | ) | |

## COMPLAINT AND CLAIM FOR JURY TRIAL

### Jurisdiction

1.      Jurisdiction of this action arises under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, et seq. ("Title VII").

### Venue

2.      Venue is proper in this court in that this is the judicial district in which Plaintiff and

Defendants reside and in which the relevant events occurred.

### Parties

3.      Plaintiff Kathleen A. Flynn ("Plaintiff") is an individual residing in Boston, Suffolk

County, Massachusetts.

4.      Defendant Massachusetts Bay Transportation Authority ("MBTA") is a body politic and

corporate organized under the laws of the Commonwealth of Massachusetts with a principal

place of business at 10 Park Plaza, Boston, Suffolk County, Massachusetts.

RECEIPT #_____
AMOUNT $____150.00
SUMMONS ISSUED____
LOCAL RULE 4.1____
WAIVER FORM____
MCF ISSUED____
BY DPTY. CLK.____
DATE 11-4-04

5.      Defendant John Rossi ("Rossi") is an individual residing in Massachusetts with a usual place of business at the MBTA, 10 Park Plaza, Boston, Suffolk County, Massachusetts.

6.      Defendant William Devlin ("Devlin") is an individual residing in Massachusetts with a usual place of business at the MBTA, 10 Park Plaza, Boston, Suffolk County, Massachusetts.

General Allegations

7.      Plaintiff has been employed by the MBTA since August 1988.  Plaintiff has worked for the MBTA for more than 16 years.

8.      Plaintiff performed her job duties satisfactorily during the course of her employment.

9.      At times material, Defendant Rossi has been the Superintendent of the Red Line of the MBTA.

10.     At times material, Defendant Devlin has been the Supervisor for Night/Weekend Operations of the Red Line of the MBTA.

11.     Rossi and Devlin held supervisory positions over Plaintiff.

12.     Plaintiff desired to obtain the position of Supervisor at the MBTA.

13.     Under MBTA rules and regulations, in order to be eligible for the position of Supervisor, Plaintiff had to be trained as a spare Supervisor.

14.     In or about April 1998, Plaintiff was selected for the apprenticeship program of Supervisor of Night/Weekend Operations.

15.     Plaintiff's selection for this apprenticeship program should have resulted in her name being placed on the "spare list" and in her being trained as a Spare Supervisor.

16.     Plaintiff made requests to Rossi for training as a Spare Supervisor.  However, Rossi failed and/or refused to allow Plaintiff to be trained.

17.     Shortly thereafter, Plaintiff was out of work for approximately one year due to a serious work-related accident.

18.     Following Plaintiff's return to work from the industrial accident leave, she continued untrained as a Spare Supervisor despite ongoing requests to Rossi for such training.

19.     Plaintiff reapplied for the spare list in or about February 2001 and was selected again for the spare list on May 7, 2001.

20.     Plaintiff was the only female on this spare list.

21.     Though Plaintiff had reapplied for the spare list, Plaintiff should already have been on the spare list since April 1988.  Plaintiff reapplied to make sure that she continued to be eligible for the spare list.

22.     Despite numerous ongoing requests to Rossi for training as a Spare Supervisor, Rossi failed and/or refused to allow Plaintiff to be trained.

23.     Plaintiff was out of work on a second industrial accident leave of absence for a work-related injury from January 6, 2002 to February 28, 2002.

24.     While Plaintiff was out of work during this seven-week industrial accident leave of absence, Rossi caused a male, Timothy Nee, to be trained and assigned to the spare Night/Weekend list.

25.     Upon information and belief, Mr. Nee never applied for this position and was not on the spare list at the time.

26.     Following Plaintiff's return to work from this second industrial accident leave, Mr. Nee continued to be on the spare list for Night/Weekend Supervisor.

27.     The training and assignment of Mr. Nee to the spare list made him eligible to bid for the position of Day Supervisor.

28.     The failure to train and/or assign Plaintiff to the spare list made her ineligible to bid for the position of Day Supervisor.

29.     Rossi informed Plaintiff that Mr. Nee would outrank her as a spare if and when she was trained.

30.     Plaintiff was effectively bypassed for this promotion by Mr. Nee.

31.     Plaintiff learned that Defendant Devlin had made remarks to two MBTA employees, musing about Plaintiff having a "threesome" with two other females and wondering "who would be on top."

32.     Plaintiff learned that MBTA Instructor Diane Kenick had stated to a co-worker that she (Kenick) "knows" that Plaintiff is gay.

33.     Plaintiff had not discussed her sexual orientation at the workplace and has been devastated emotionally by this invasion of her privacy and clear violation of work rules by Devlin and Kenick.

34.     On July 25, 2002, Plaintiff filed a charge of gender discrimination, sexual harassment and sexual orientation discrimination (the "Charge") against the MBTA with the Massachusetts Commission Against Discrimination ("MCAD").

35.     Rossi's actions in failing to train Plaintiff as a Spare Night/Weekend Supervisor and his training and assigning a male as a Spare Night/Weekend Supervisor was the primary subject matter of the Charge.

36.     Devlin was named in the Charge as an individual who had made derogatory and inappropriate comments to other employees concerning Plaintiff's sexual orientation.

37.    Plaintiff was subjected to further discrimination based on gender and/or sexual orientation since the filing of the Charge and was subjected to retaliation and reprisal by Defendants because she filed the Charge.

38.    After Plaintiff filed the Charge, Devlin let it be known at the workplace that he "was out to get [Plaintiff] fired." Plaintiff learned of Devlin's retaliatory statements through co-workers.

39.    Plaintiff knew Devlin to be a bully and was intimidated by Devlin's statements.

40.    On September 26, 2002, approximately two months after filing the Charge, Plaintiff received a written warning for absenteeism due to a medical absence documented by a doctor's note. This was inconsistent with past practice at the MBTA.

41.    On January 13, 2003, Plaintiff was falsely accused of being AWOL based on an alleged "no call no show" at work.

42.    Plaintiff was given a 3-day suspension for being AWOL. This was subsequently reduced to a one-day suspension.

43.    Plaintiff should not have been disciplined for being AWOL since she missed work due to a mistake. In addition, the discipline given was unfair and discriminatory. The MBTA has not treated similar incidents involving other workers with similar discipline.

44.    On or about July 8, 2003, Plaintiff learned from a female coworker that MBTA Inspector Brian Sheehy had made an explicit remark to another male, Collector Burke, concerning Plaintiff's sexual orientation. This remark (that Plaintiff was only interested in women) was repeated by Collector Burke to the female collector who told Plaintiff.

45.    Plaintiff made a complaint concerning this incident to the MBTA's Office of Diversity and Civil Rights.

46.     The MBTA's Office of Diversity and Civil Rights obtained witness statements from those involved and concluded that review of the witness statements could not establish that the remarks constituted "offensive remarks based on [Plaintiff's] sexual orientation." However, that office contacted the supervisor of the men, Carolyn Daniels, and asked her to remind them of the MBTA's civility standard.

47.     The MBTA's Office of Diversity and Civil Rights failed to recognize the seriousness of Plaintiff's complaint or to take appropriate corrective or remedial action.

48.     In addition, the MBTA refused to provide Plaintiff with a copy of the witness statements from either Inspector Brian Sheehy or Collector Burke so that Plaintiff could determine whether they admitted or denied the alleged remarks. This denial of access to such statements is inconsistent with past practice of the MBTA.

49.     On November 18, 2003, The MBTA demoted Plaintiff permanently from her Inspector position based on an incident that had occurred approximately three months earlier.

50.     That incident involved an alleged error of judgment on Plaintiff's part in failing to report immediately to the MBTA police or to her superiors an encounter on the Red Line with a former MBTA employee who made threatening remarks concerning his ex-girlfriend, a current MBTA employee.

51.     Plaintiff had no training at the MBTA on how to handle or deal with this situation.

52.     Plaintiff did not believe that there was any imminent danger from this former employee.

53.     Unbeknownst to Plaintiff, but known by Rossi, this former MBTA employee had a restraining order against him barring him from being anywhere on the Red Line.

54.     Rossi had failed to inform Plaintiff or any of the other inspectors to be on the lookout for this former employee or to immediately report his presence on the Red Line to the MBTA police or to their superiors.

55.     After this incident, Plaintiff was interviewed extensively by the MBTA concerning her conduct. Rossi was present at the interview.

56.     Rossi stated on two occasions during the interview that the reason why he was not conducting it was that "Kathy Flynn has something against me." Rossi was referring to the Charge Plaintiff had filed at the MCAD.

57.     Plaintiff filed a union grievance regarding her permanent demotion.

58.     That grievance went to arbitration with the result that Plaintiff's permanent demotion was reduced to a six-month demotion.

59.     The arbitrator found that the MBTA's permanent demotion of Plaintiff was too harsh a response to Plaintiff's admitted error in judgment and that the MBTA lacked just cause to permanently demote Plaintiff.

60.     The arbitrator also found that MBTA management committed a serious error of judgment in not informing Plaintiff or the other inspectors to be on the lookout for this former employee or to immediately report his presence on the Red Line. The arbitrator found that it was "inexplicable" that Rossi had failed to do so.

61.     Moreover, upon information and belief, Rossi had told the former employee that he could be on the Red Line, despite the restraining order, but to "go the other way" if he saw his ex-girlfriend.

62.     Plaintiff's permanent demotion represents disparate and retaliatory treatment based on her protected activity of filing the Charge.

63.     The MBTA and Rossi refused to provide Plaintiff with a copy of the relevant witness statements or police reports concerning its investigation of the incident so that Plaintiff could properly defend herself against the disciplinary action taken against her.

64.     Plaintiff has been subjected to further discriminatory treatment and retaliation by the MBTA and Rossi following her demotion.

65.     Under the union contract, Plaintiff had the right to return to the yard as a yard motor person rather than stay as a motor person on the trains.

66.     Plaintiff was denied return to the yard for the stated reason that Rossi failed or refused to compile a yard list so that the union could see where Plaintiff rated.

67.     The union brought this issue to Rossi's attention, but he failed or refused to correct it.

68.     Plaintiff has also been unfairly denied overtime pay.

69.     Defendants discriminated against Plaintiff because of her gender.

70.     Defendants discriminated against Plaintiff because of her sexual orientation.

71.     Defendants retaliated against Plaintiff because of her protected activities of opposing their discriminatory practices and filing the Charge.

72.     Defendants' conduct was intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

73.     Plaintiff has been injured and damaged by Defendants' conduct.

74.     As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress.

75.     The MBTA at all relevant times has employed more than fifteen persons.

76.   Plaintiff has complied with all statutory requirements and conditions precedent necessary

to maintain this action by filing timely charges with the Massachusetts Commission Against

Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC").

77.   On August 11, 2004, the EEOC issued Plaintiff a notice of right to sue.

## COUNT I – Sex Discrimination
### (Violation of Title VII of the Civil Rights Act of 1964)
(Against the MBTA only)

78.   Plaintiff repeats the allegations contained in paragraphs 1 through 77 as if fully set forth.

79.   The MBTA's acts represent, inter alia, intentional discrimination on the basis of sex or

gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

## COUNT II - Sex Discrimination
### (Violation of M.G.L. c. 151B)
(Against the MBTA only)

80.   Plaintiff repeats the allegations contained in paragraphs 1 through 79 as if fully set forth

herein.

81.   The MBTA's conduct represents, inter alia, intentional discrimination on the basis of sex

or gender in violation of M.G.L. c. 151B, s. 4(1).

## COUNT III - Sexual Harassment
### (Violation of M.G.L. c. 151B)
(Against the MBTA only)

82.   Plaintiff repeats the allegations contained in paragraphs 1 through 81 as if fully set forth.

83.   The MBTA's conduct represents, inter alia, sexual harassment in violation of M.G.L. c.

151B, s. 4(16A)

## COUNT IV – Sexual Orientation Discrimination
### (Violation of M.G.L. c. 151B)
(Against the MBTA only)

84.    Plaintiff repeats the allegations contained in paragraphs 1 through 83 as if fully set forth.

85.    The MBTA's conduct represents, inter alia, intentional discrimination on the basis of sexual orientation.

## COUNT V - Aiding and Abetting
### (Violation of M.G.L. c. 151B)
(Against Defendants Rossi and Devlin only)

86.    Plaintiff repeats the allegations contained in paragraphs 1 through 85 as if fully set forth.

87.    Defendants Rossi and Devlin aided and abetted the MBTA in such discrimination and unlawfully interfered with Plaintiff's rights in violation of M.G.L. c. 151B, s. 4(4A) and 4(5).

## COUNT VI - Retaliation
### (Violation of Title VII of the Civil Rights Act of 1964)
(Against the MBTA only)

88.    Plaintiff repeats the allegations contained in paragraphs 1 through 87 as if fully set forth .

89.    The MBTA discriminated against Plaintiff because she opposed acts or practices made unlawful by Title VII and/or because Plaintiff filed a charge and/or participated in an investigation, proceeding, or hearing under Title VII.

90.    The MBTA's conduct represents, inter alia, retaliation and reprisal in violation of 42 U.S.C. § 2000e-3(a).

## COUNT VII - Retaliation
### (Violation of M.G.L. c. 151B)
(Against all Defendants)

91.    Plaintiff repeats the allegations contained in paragraphs 1 through 90 as if fully set forth.

92.    Defendants' conduct represents retaliation in violation of M.G.L. c. 151B, s. 4(4).

## COUNT VIII - Interference, Coercion, or Intimidation
### (Violation of M.G.L. c. 151B)
(Against all Defendants)

93.    Plaintiff repeats the allegations contained in paragraphs 1 through 92 as if fully set forth.

94.    Defendants intimidated and interfered with Plaintiff because she exercised her rights or

because he aided or encouraged others to exercise their rights granted or protected by M.G.L. c.

151B.

95.    Defendants' conduct represents, inter alia, intimidation and interference in violation of

M.G.L. c. 151B, s. 4(4A).


## COUNT IX – Intentional Interference With Contractual Relations
### (Against Defendants Rossi and Devlin only)

96.    Plaintiff repeats the allegations contained in paragraphs 1 through 95 as if fully set forth.

97.    Plaintiff had an employment contract and/or advantageous relations with the MBTA with

a reasonable expectation of continued employment and advancement.

98.    Defendants Rossi and Devlin knowingly induced the MBTA to jeopardize, harm and

undermine Plaintiff's employment contract and/or advantageous relations.

99.    The interference of Defendants Rossi and Devlin was intentional and was improper in

motive or means.

100.    Plaintiff was harmed by the actions of these Defendants.

## COUNT X– Intentional Infliction Of Emotional Distress
(Against Defendants Rossi and Devlin only)

101.   Plaintiff repeats the allegations contained in paragraphs 1 through 100 as if fully set forth.

102.   Defendants Rossi and Devlin intended to inflict emotional distress upon Plaintiff or they

knew or should have known that emotional distress was the likely result of their conduct.

103.   The conduct of Defendants Rossi and Devlin was extreme and outrageous and beyond all

possible bounds of decency and utterly intolerable in a civilized community.

104.   The actions of these Defendants caused severe emotional distress.

105.   Plaintiff's emotional distress was severe and of a nature that no reasonable person

could be expected to endure it.

## COUNT XI– INVASION OF PRIVACY
(Against Defendants MBTA and Devlin only)

106.   Plaintiffs repeat the allegations contained in paragraphs 1 through 105 as if fully set forth.

107.   Plaintiff had a right against unreasonable, substantial or serious interference with her

privacy pursuant to M.G.L.c. 214, § 1B.

108.   Defendants MBTA and Devlin infringed upon Plaintiff's right to privacy.

109.   Plaintiff was damaged by the invasion of her privacy.

## RELIEF SOUGHT

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.    Enter judgment against the MBTA on Count I for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

B.    Enter judgment against the MBTA on Count II for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

C.    Enter judgment against the MBTA on Count III for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs

D.    Enter judgment against the MBTA on Count IV for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

E.    Enter judgment against Defendants Rossi and Devlin on Count V for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

F.    Enter judgment against the MBTA on Count VI for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

G.    Enter judgment against each of the Defendants on Count VII for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

H.    Enter judgment against each of the Defendants on Count VIII for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

I.    Enter judgment against Defendants Rossi and Devlin on Count IX for compensatory damages, interest and costs.

J.    Enter judgment against Defendants Rossi and Devlin on Count X for compensatory damages, interest and costs.

K.    Enter judgment against Defendants MBTA and Devlin on Count XI for compensatory damages, interest and costs.

L.    Enter a preliminary injunction ordering each of the Defendants to cease and desist from further discrimination and retaliation against Plaintiff.

M.    Enter a permanent injunction ordering each of the Defendants to cease and desist from further discrimination and retaliation against Plaintiff.

N.    Enter such other and further relief as this Honorable Court may deem just and proper.


**PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL COUNTS.**


KATHLEEN A. FLYNN,

By her Attorney,



_____
Richard A. Mulhearn
BBO #: 359680
Law Offices of Richard A. Mulhearn
41 Elm Street
Worcester, MA 01609
Telephone: (508) 753-9999


Date: November 4, 2004.